Edelson

November 12, 2026

**<u>Via CM/ECF</u>**

Molly C. Dwyer, Clerk
United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, California 94103

Re: *Wilkinson, et al. v. Meta Platforms, Inc., et al.* (No. 25-7916) and *Custodero, et al. v. Apple Inc.* (No. 25-7917)

Dear Ms. Dwyer:

Plaintiffs respectfully disagree that *Shared Partnership v. Meta Platforms, Inc.* supports the Platforms' position. Most importantly, the Platforms' letter omits the key holding of *Shared*:

> In its complaint, Shared explicitly alleged that Meta is liable for "*unpublishing* the Shared Pages within Facebook." Shared also argues in its briefs that Meta's "wrongful act" was "permanently *unpublishing* Shared's pages." Simply put, Shared sued Meta because the latter exercised its publishing prerogative by removing third-party content—i.e., Shared's Facebook pages. Such a decision to remove content and prevent someone from posting advertisements is a quintessential editorial decision protected under Section 230.

Slip op. at 10. The *Shared* court repeatedly returned to editorial discretion and decision-making as the basis for applying Section 230. *Id.* at 9 ("Being a 'publisher' includes exercising editorial functions[.]"); *id.* at 12 ("The Terms of Service just restate Meta's ability to exercise editorial discretion."); *id.* at 13 ("The promise in *Calise* was not centered on paradigmatic editorial discretion like the relevant Terms of Service here[.]"); *id.* ("Such a contractual promise does not sound in editorial discretion[.]").

Plaintiffs' legal theory does not implicate editorial discretion or require the Platforms to unpublish third-party content. Nevertheless, the Platforms insist that *Shared* stands for the proposition that "[d]istributing content for pay defines the business of publishing." Letter at 2 (citing slip op. at 9-10). Nothing close to that dubious proposition appears in *Shared*. Nor could it,

given that the Platforms' position merely rephrases the rejected "'but-for' test that would provide immunity under the CDA solely because a cause of action would not otherwise have accrued but for the third-party content." *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019); *accord Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 647 (9th Cir. 2025).

Brokering transactions for chips to be wagered at a virtual casino is not "quintessential publishing activity." Slip op. at 12. It is, however, quintessential gambling activity. *See Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785 (9th Cir. 2018). Section 230 does not categorically immunize the Platforms from liability for brokering illegal gambling transactions.

Respectfully submitted,

EDELSON PC

Alexander G. Tievsky